**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**
_____

| | |
|---|---|
| **JANICE ELIA TORRES,** | Case # 01017 civ. 2015 (RA) |
| **Plaintiff** | |
| -against- | **VERIFIED COMPLAINT AND JURY DEMAND** |

*Jointly and Severally,*

**THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, JOHN DOE #1, JOHN DOE #2, and KIMBERLY BARTFIELD,**

**Defendants.**
_____

### I.  Introduction

1.   Comes now, the Plaintiff, Janice Elia Torres (hereinafter "Torres"), through her undersigned counsel to file her cause of action against the Defendant(s): the City of New York, the City of New York Police Department, and the arresting two New York City Police Officers, and Kimberly Bartfield, (hereinafter "Bartfield") the assaulter, individually and in their official capacities, because Defendants jointly and severally, violated Plaintiff's Civil Rights and Civil Liberties as guaranteed her by the *United States Constitution* and laws of the U.S. and the State of New York.  Accordingly, Torres avers, based on information and believe, which is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery, as follows:

### II.  Jurisdiction

2.   This Court has *in personam* and *subject matter jurisdiction* pursuant to *Title 28 USC § 1331*, where a Federal Question is at issue.  All Defendants, except Bartfield, are all

employees of the City of New York and the New York City Police Department, who acted under color of law.

3.  This action is brought pursuant to *42 USC §§ 1983* and *1988* and the *Fourth Amendment* to the *United States Constitution*, made applicable to Defendants through the *Fourteenth Amendment* to the *U.S. Constitution*. This Court has jurisdiction over Torres' claims under *28 U.S.C. § 1331* (Federal Question) and under *Title 28 USC § 1343(3)* (Civil Rights).

4.  This Court further has jurisdiction over Torres' State law claims under *Title 28 USC § 1367* (Supplemental Jurisdiction) as those claims form part of the same case or controversy under *Article III* of the *United States Constitution*.

### III.  Venue

5.  Venue lies within the United States District Court for the Southern District of New York, the district in which Torres' claims arose, pursuant to *Title 28 USC § 1391(b)*.

6.  At all times material hereto, Torres was of the age of majority and a United States Citizen by virtue of having been born in the City of New York, within the State of New York on June 30, 1990.

7.  Defendants, John Doe #1 and John Doe #2 were employed as Police officers by the City of New York and operated within the jurisdiction of the Southern District Court of New York.

8.  The Constitutional torts and unlawful and prohibitive practices alleged herein were committed by the Defendant(s) under "color of law" within the geographic location of the United States and subject to the Federal Statutes as mandated by the United States Congress.

### IV.  Parties

9. Plaintiff Torres is a United States Citizen entitled to protection under all Federal and State statutes. Any service of process may be made upon her present Counsel.

10. Defendant, the City of New York hereinafter referred to as the "City" is a Municipal Corporation whose principal address for lawsuits or whose agent for such purposes is the: Corporation Counsel, located at 100 Church Street, 5th Floor, New York, New York 10007.

11. City is a legally recognized and organized Municipal Corporation pursuant to the New York State Constitution and State Law and Treaty.  Incident to its duties as a Municipal Corporation, the City organized and maintained, at all times material hereto, a Police Department and is responsibility for the selection, training, supervision, and operation of the Police Department, and its individual Police Officers, acting through its duly elected and selected Administrative Officers and Representatives.

12. Defendant the New York City Police Department (hereinafter "NYPD"), is a City agency, employed by the City, located at One Police Plaza, New York, New York 10038. NYPD is a subsidiary and/or agency or department of the City and the direct employer of the Defendants John Doe #1 and John Doe #2.  NYPD, as well as the City, is the agency and/or department responsible for the selecting, hiring, training and assigning the Police Officers and/or guards to their daily work duties and/or tasks.  The Corporation Counsel is also their attorney for service of process.

13. Defendants, John Doe #1 and John Doe #2, are Police Officers whose identity are unknown to Torres and were employed as Police Officers by the City and, at all times material hereto, were acting as agents and/or representatives in the performance of the duties on behalf of

City and/or NYPD on the date in question regarding the events that transpired and are the basis of this federal lawsuit. The Corporation Counsel is also their attorney for service of process.

14. Based on information and belief, Defendant Bartfield is a Citizen of the City of New York and/or resides within the City of New York, and was in the City of New York on the date in question regarding the events that transpired and are the basis of this federal lawsuit. Bartfield is also the assaulter in this action, having assaulted Torres as more fully explained herein.

### V.  Facts

15. Torres repeats and re-alleges and incorporates by reference paragraphs 1-14 inclusive as though fully set forth in their entirety herein.

16. On or about October 22, 2014, at about 4:15 p.m., Torres was at the Thomas Jefferson Park playground located at First Avenue between 111th and 114th Street with her son Jacob and their trained service dog, Skyler, enjoying the beautiful weather.

17. Torres was suddenly distracted by Bartfield who was speaking in a very loud tone on her cellphone in an attempt to obtain Torres' attention, telling someone on the other end of the cellphone: "This bitch should know this is not a dog park!"

18. Torres turned around and asked Bartfield: "Excuse me are you referring to me?" and explained to Bartfield the park does have a dog location.

19. Bartfield then, falsely, maliciously, and with an intent to instigate an altercation, accused Torres that her dog Skyler tried to attack her son when Jacob accidently dropped Skyler's leash.

20. Torres, in an attempt to calm Bartfield, explained to Bartfield that it is impossible because Skyler is a specially trained "service dog" and is specifically trained not to attack

humans, especially a child! Skyler was trained to be with Jacob who is autistic with a speech impediment.

21. According to the Americans with Disabilities Act (hereinafter "ADA") it defines a "service animal" as: "…<u>any</u> guide dog, signal dog, or other animal individually trained to provide assistance to an individual with a disability. If they meet this definition, animals are considered service animals under the ADA regardless of whether they have been licensed or certified by a state or local government." A service animal is <u>not</u> a pet.

*http://www.ada.gov/qasrvc.htm*

22. After Torres calmly explained this to Bartfield, Bartfield became even more confrontational and hysterical, yelling at Torres, in a loud voice, and approaching Torres as though to strike Torres, placing Torres in reasonable fear of her safety and that of Skyler, and her son Jacob.

23. Bartfield left the park, yelling obscenities at Torres. When Torres left the park, Torres saw Bartfield at the park's entrance apparently waiting for Torres to possibly assault Torres. Torres had a reasonable expectation of a physical encounter with Bartfield, since Bartfield was talking to someone on her cellphone telling them what was happening.

24. Torres, feeling threatened, summoned her sister Gabriela Torres to accompany Torres at the dog park. A few minutes later, Gabriela joins Torres at the park. Then, Bartfield approached Torres with her child and an African male. Bartfield told Torres she wanted to attack Torres, but instead she called the police to remove Skyler from the dog park.

25. The African male individual with Bartfield, at Bartfield's insistence, threatened Torres telling Torres he wanted to "box her," a slang reference to threatening to cause extreme

physical injuries to Torres, placing Torres in reasonable fear of her safety and that of Jacob and Skyler.

26. While this second confrontation was occurring at the dog park with Bartfield and her unidentified male companion, the police who Bartfield had summoned appeared at the dog park. Upon seeing the officers, Bartfield and her male companion started to act even more confrontational towards Torres, threatening to cause Torres physical injury and yelling obscenities at her.

27. Torres in reasonable fear of her safety and Jacob's, telephoned Randy, Jacob's father, since as Torres explains: "I felt threatened especially when a guy wants to hit me."

28. On October 22, 2014, around 5:35 p.m., the police arrived and saw and heard Bartfield and her African male companion threatening Torres, they told them to go home after explaining to them what is a service dog. As they left the park, Torres informed the police officers that Bartfield and African male companion threatened her and she asked what to do if they attempted to attack her. The police officer instructed Torres to call the Police Department and they will arrest them.

29. On October 29, 2014, one week later, as Torres was at the corner of 115th Street, waiting to pick up Jacob from the school bus with Skyler, Torres sees Bartfield across the street. Bartfield also sees Torres and, again, threatened Torres by telling her: "You are lucky I'm with my son because [I] would have attacked [you] right there" and blocks Torres' freedom of movement in the direction of the dog park. Torres in an attempt to avoid a confrontation walks around Bartfield ignoring her.

30. Three weeks later, on Veteran's Day, November 11, 2014, at about 5:00 p.m., Torres went to DMG Deli Mini Market (hereinafter "DMG") located at 339 115th between First

and Second Avenues, around the corner from Torres' residence, and placed an order and was standing inside of DMG waiting for the order when she heard a voice saying: "Didn't I say I was gonna catch you by yourself!" Torres looked up and saw Bartfield who immediately, without provocation, struck Torres at her nose, face, and back multiple times.

31. Torres, in self-defense, grabbed Bartfield by her hair in order to shield herself from Bartfield's continued punches to Torres' head, face, and nose. Mike, who works behind the counter at DMG, hugged Torres in order to shield Torres from the barrage of punches Bartfield was able to land as a result of attacking Torres, from behind. However, Bartfield, relentlessly, continued striking Torres and Mike, who continued to shield Torres.

32. Despite the injuries Torres sustained, after Bartfield stopped striking Torres, Bartfield tried to escape by running out of the store. Torres went after Bartfield to stop her from escaping since Torres wanted Bartfield arrested, as the police officer from the dog park had previously informed Torres in the event of an attack by Bartfield.

33. Two NYPD Police Officers, referred to in this complaint as John Doe #1 and John Doe #2, who are Police Officers whose identity are unknown at this time to Torres, appeared in front of DMG and arrested both Bartfield and Torres, despite Torres' visible injuries to her face and after informing the police officers she was the victim, attacked by Bartfield by surprise, from behind, and without provocation.

34. Torres informed the Police Officers to question Mike and any present witnesses that Torres acted in self-defense after Bartfield attacked her, from behind, without provocation while Torres was waiting inside the DMG for her purchase.

35. Torres informed the Police Officers to question the people in DMG, but they refused to do so. Instead, the Police Officers told Torres to shut up, handcuffed her, squeezing

the handcuffs too tightly on Torres' wrists. Despite Torres telling the Police Officers the handcuffs were too tight, they did nothing to lessen the pain caused by the handcuffs to her wrists. Torres was thrown in the backseat of the police car in handcuffs and driven to the police precinct located about 11 blocks away at 124th Street between First and Second Avenues.

36. Upon arriving at the police precinct, Torres was searched, photographed, and placed in a holding cell. Torres immediately asked to speak to her lawyer. Torres was refused the right to speak to any lawyer. Instead, the police officers asked Torres how old she was which she answered 24 years old and refused her the right to speak a lawyer.

37. Additionally, Torres demanded medical attention since she had suffered visible injuries to her face as a result of Bartfield's attack.

38. After three hours in a cell and asking for medical care, Torres was not provided medical care nor taken to the hospital, despite informing the police officer she wanted to speak to an attorney and receive medical attention for her visible injuries as well as for her continuously bleeding nose and after informing the police officers she had recently undergone Rhinoplasty surgery.

39. After three hours or more in a cell, Torres' fingerprints were taken and she was issued an appearance ticket to appear at Criminal Court on December 23, 2014, and released.

40. After being released, Torres went to Mount Sinai emergency room where she was told she had suffered a post-concussion.

41. On February 2, 2015, Torres, through her undersigned counsel, electronically filed a Notice of Claim with the City of New York, Office of the Comptroller, Claims and Adjudications and was assigned Receipt #201500015469.

42.     As a result of said filing, on February 3, 2015, Torres was assigned Claim #2015 PI002661.

43.     As of the filing of the Claim, no one from the Comptroller's office has contacted Torres nor her attorney.

44.     As a result of Bartfield's assault and battery and Defendant's negligence in not providing Torres with medical treatment, Torres suffered from post concusion and requires to under another Rhinoplasty surgery.

45.     On or about December 23, 2014, Torres appeared in Criminal Court as a result of the desk appearance ticket she received.  The City was not ready and the case was adjourned.

46.     On January 22, 2015, Torres was notified that she has to appearance at the Criminal Court to answer the charges against her on February 13, 2015.

## AS AND FOR A FIRST CAUSE OF ACTION

### City, NYPD, and its Two NYPD Police Officers, John Doe #1 and John Doe #2 Violated Torres' Rights under Title 42 USC § 1983

47.     Torres repeats and re-alleges and incorporates by reference paragraphs 1- 46 inclusive as though fully set forth in their entirety herein.

48.     The Civil Rights Act, codified as *42 USC § 1983*, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any state or territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any laws, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

49.     Defendants City, NYPD, and the Two NYPD Police Officers, referred to in this complaint as John Doe #1 and John Doe #2, who are Police Officers whose identity are unknown

to Torres, were acting under "color of state law," when they deprived Torres of her rights, privileges and immunities as those rights are secured by the U.S. Constitution and laws of the U.S., including those rights secured by and under the Fourth, Fifth and Fourteenth Amendments, to wit., Defendants violated the Torres's rights to be free from summary punishment and deprivation of life and liberty without due process of law under the Fifth and Fourteenth Amendments to the U.S. Constitution.

50. The City, through its Police Department, NYPD, its officers and agents, willfully and maliciously pursued *de facto* policies, practices and customs that were a direct and proximate cause of the deprivation of Torres' Constitutional rights as alleged herein. They failed to follow there own polices, practices and customs that include, *inter alia*: (a) failure to properly screen, supervise, discipline, transfer, counsel or otherwise control police officers who are known or who they should have known to engage in the use of excessive force, especially those officers repeatedly accused of such acts; (b) ratification of acts of improper use of force, with knowledge of their illegality; and, (c) a police code of silence where in other officers and supervisors habitually cover up use of excessive force by fabricating accounts to the official report which was designed to falsely exonerate officers from potential civil liability.

51. The state action requirement for standing under *42 USC § 1983* is more commonly referred to as "color of state law." Upon information and good faith belief, thereupon alleges that in committing said acts and/or omissions, each Defendant was the agent and employee of the City and/or NYPD and were acting within such agency and employment and that each Defendant was acting under color of state law.

## AS AND FOR A SECOND CAUSE OF ACTION

**City, NYPD, and its Two NYPD Police Officers, John Doe #1 and
John Doe #2 Committed Assault and Battery Against Torres**

52.     Torres repeats and re-alleges and incorporates by reference paragraphs 1- 51 inclusive as though fully set forth in their entirety herein.

53.     Torres alleges an alternative pendent State law claim for assault and battery, City, NYPD, and its Two NYPD Police Officers, John Doe #1 and John Doe #2, in that Torres should not have been searched, arrested, photographed, and placed in a holding cell, refused her right to an attorney, and medical treatment, when there were less intrusive means to handle the situation such as the issuance of a desk appearance ticket, which officers John Doe #1 and John Doe #2, in fact, did issue after Torres was detained in a cell for over three hours.

54.     Torres' illegal arrest and detention by City, NYPD, and its Two NYPD Police Officers, John Doe #1 and John Doe #2, was intentionally, knowingly, and/or was in reckless disregard to Torres' safety and wellbeing and was the proximate cause of physical and emotional injuries to the Torres.  Said injuries were the direct and immediate consequence of Defendant's illegal and wrongful acts and a natural and direct result of their assault and battery against Torres.  At no time were Defendants privileged to take the action nor were their action necessary under the circumstances.

55.     A pendent state cause of action, at all times material and relevant herein, the individual Defendants, by acts and/or omissions and under color of state law did then and there by acts and/or omissions, intentionally, knowingly and/or recklessly caused personal injury to Torres by the Defendants illegal physical contact with her and unlawfully detaining her  for an excessive amount of time to simply issue a desk appearance ticket which could have been issued without handcuffing, arresting, nor detaining Torres in a holding cell.

56.     Consequently, Torres additionally alleges that the individual Defendants committed an assault upon Torres when they searched, arrested, photographed, and placed her in

a holding cell, refused her right to an attorney, and medical treatment. The act of intentionally, knowingly, and/or recklessly forcibly detaining Torres amounted to an assault of her.

57. At no time did Torres consent. Defendant's assaultive conduct of Torres committed intentionally, knowingly, and/or recklessly was the proximate cause of Torres' bodily injury and/or worsening thereof, and the cause of her emotional injuries which were the direct and immediate consequence of the Defendants' wrongful acts and as a direct result of the assault.

58. Defendants actions herewith were not privileged nor necessary and their assault and battery of Torres was not objectively reasonable when balancing their action and/or inaction.

**AS AND FOR A THIRD CAUSE OF ACTION**

**City, NYPD, and its Two NYPD Police Officers, John Doe #1 and
John Doe #2 Committed Unreasonable Seizure, False Arrest, and False
Imprisonment in Violation of Torres' Fourth Amendment to the U.S. Constitution**

59. Torres repeats and re-alleges and incorporates by reference paragraphs 1- 58 inclusive as though fully set forth in their entirety herein.

60. Torres further alleges that Defendants, jointly and/or severally, violated her Fourth Amendment rights made applicable by the Fourteenth Amendment to the U.S. Constitution to the States when she was unreasonably falsely arrested and/or detained.

61. Torres alleges such a claim under § 1983 for having been falsely arrested and detained pursuant to the Fourth and Fourteenth Amendments of the U.S. Constitution when Torres was arrested by Defendants without probable cause.

62. Defendants, by their acts and/or omissions and under color of state law, willfully detained Torres without her consent and without authority of law. Defendants intended to confine Torres and carried out the intent by putting Torres in a position she could not move nor leave as a result of her confinement for over Three hours.

63. Said confinement of Torres resulted in wrongful and harmful detention to her, without her consent, and without authority of law. Defendants did not have probable cause, having seen Torres visible bruises to her face and bleeding nose, to arrest Torres because the true facts and circumstances within their knowledge were not reasonably sufficient to warrant an officer to believe that Torres had committed or was committing an offense.

64. On an objective basis, it is obvious that no reasonably competent Police Officer would have concluded that Torres who was premeditatedly attacked from behind and bore visible facial injuries warranted arrest. Therefore, Defendants violated Torres' Fourth and Fourteenth Amendments right pursuant to *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971) and Title 42 USC §1983.

## AS AND FOR A FOURTH CAUSE OF ACTION

### City, NYPD, and its Two NYPD Police Officers, John Doe #1 and John Doe #2 Use of Excessive Force

65. Torres repeats and re-alleges and incorporates by reference paragraphs 1- 64 inclusive as though fully set forth in their entirety herein.

66. The Defendants used excessive and/or unnecessary force in the course of the officers' false arrest or assault and battery against Torres, who complained about the handcuffs being too tight and/or "seizure" of a free citizen, such as Torres, in violation of her Fourth and Fourteenth Amendments and its "reasonableness" standard.

67. Torres alleges that she was assaulted by Defendants as a result of their excessive use of force under the circumstances, and the excessiveness of which was objectively unreasonable.

68. The Defendants' actions and/or omissions were "objectively unreasonable" in light of the facts and circumstances confronting Torres without regard to their underlying intent or motivation. Clearly, careful attention to the facts and circumstances of this particular case demonstrates the unreasonableness of Defendants actions. For these reasons, it is objectively reasonable that the Officers physical assault upon Torres resulted in both physical and mental injuries against Torres.

## AS AND FOR A FIFTH CAUSE OF ACTION

### City, NYPD, and its Two NYPD Police Officers, John Doe #1 and John Doe #2 Indifference to Torres' Medical Needs
### Defendant's Violation of the Eight Amendment of the U.S. Constitution

69. Torres repeats and re-alleges and incorporates by reference paragraphs 1- 68 inclusive as though fully set forth in their entirety herein.

70. Defendants caused or worsen Torres' injuries by not providing her with medical assistance and arresting her without probable cause. Before Torres was arrested, she bore visible facial injuries to the front and side of her face. After Torres was arrested, she complained of the handcuffs being too tight and needing medical assistance. After Torres was transported to the Police Precinct, while Torres was being searched, photographed, and placed in a holding cell, she complained she needed medical assistance, as a result of her nose constantly bleeding and having informed the officers that she recently had Rhinoplasty surgery and still the officers did not provide Torres with medical assistance. After more than Three hours detained in a holding cell, the Police Officers were more concerned with fingerprinting and issuing Torres a desk appearance ticket than attending to her physical injuries caused in part by Bartfield and worsened by Defendants inaction, who exhibited an indifference to Torres' physical injuries, denying her immediate medical attention for over Three hours. [*See Wilson v. Seiter*, 501 U.S. 294, 297

(1991) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981) *and Farmer v. Brennan*, 511 U.S. 825 (1994)].

## AS AND FOR A FIFTH CAUSE OF ACTION

### Bartfield Committed Assault and Battery Against Torres

71.     Torres repeats and re-alleges and incorporates by reference paragraphs 1- 70 inclusive as though fully set forth in their entirety herein.

72.     Since August, 2014, after the incident at the dog park, Bartfield has continuously and without provocation threatened Torres she would get her.

73.     One week later, as Torres was at the corner of 115th Street, waiting to get Jacob from the school bus with Skyler, Torres sees Bartfield, across the street. Bartfield also sees Torres and, again, threatened Torres by telling her: "You are lucky I'm with my son because [I] would have attacked [you] right there" and blocks Torres' freedom of movement in the direction of the dog park. Torres in an attempt to avoid a confrontation walks around Bartfield ignoring her.

74.     On November 11, 2014, Bartfield seeing Torres in DMG attacked Torres from behind, without provocation from Torres.

75.     Bartfield caused visible facial injuries to Torres after hitting Torres in her face, head, and back, resulting a post contusion and continuous bleeding nose as a result Torres had recently undergone Rhinoplasty surgery.

76.     Bartfield caused Torres to be searched, arrested, photographed, and placed in a holding cell for over Three hours by the City, NYPD, and Two NYPD Police Officers, John Doe #1 and John Doe #2, in further resulting in Torres' mistreatment while detained.

77. Bartfield's actions against Torres were intentional, knowingly, and/or with the specific intent to cause Torres pain and suffering and thereby amounting to an assault and battery of Torres.

### AS AND FOR A SIXTH CAUSE OF ACTION

**City, NYPD, and its Two NYPD Police Officers, John Doe #1 and John Doe #2, and Bartfield Subjected Torres to Intentional Infliction of Emotional Distress**

78. Torres repeats and re-alleges and incorporates by reference paragraphs 1- 77 inclusive as though fully set forth in their entirety herein.

79. The false arrest and imprisonment of Torres was a source of the intentional infliction of emotional distress by all Defendants.

80. Instead of verifying Torres' account of what transpired at the scene of the crime, knowingly failing to speak to Mike and other witnesses, knowingly failing to take into consideration Torres visible facial injuries, and instead arresting Torres and knowingly subjecting her to tight handcuffs, refusal of her right to counsel, medical treatment, and subjecting her to an illegal search, arrest, fingerprinting, photograph, and illegally placing her in a holding cell for over Three hours, resulted in Torres having suffered emotional distress.

### AS AND FOR A SEVENTH CAUSE OF ACTION

**City, NYPD, and its Two NYPD Police Officers, John Doe #1 and John Doe #2, and Bartfield Subjected Torres to Negligent Intentional Infliction of Emotional Distress**

81. Torres repeats and re-alleges and incorporates by reference paragraphs 1- 80 inclusive as though fully set forth in their entirety herein.

82. By Defendants intentionally failing to investigate the true facts of what occurred having had the opportunity, City, NYPD, and its Two NYPD Police Officers, John Doe #1 and John Doe #2, subjected Torres to Negligent Intentional Infliction of Emotional Distress.

83. Bartfield in intentionally causing an assault and battery against Torres, without provocation, caused City, NYPD, and its Two NYPD Police Officers, John Doe #1 and John Doe #2, to falsely arrest Torres and subjecting Torres to Negligent Intentional Infliction of Emotional Distress.

### VII.  Remedies

84. Torres repeats and re-alleges and incorporates by reference paragraphs 1- 83 inclusive as though fully set forth in their entirety herein.

85. Torres demands the following:

   a. One Million Five Hundred Thousand Dollars ($1,500,000.00) in damages from any and all Defendant(s);

   b. any and all equitable (declaratory and injunctive) relief of any and all loss to Torres' reputation having been arrested and as a Citizen of the United States that was jeopardized by Defendants falsely arresting her which will require disclosure on employment and security applications.

   c. actual damages including back pay, front pay and any other compensatory damages suffered by the Plaintiff due to the Defendants false and malicious allegations;

   d. liquidated damages;

   e. attorney's fees; and,

   f. any and all relief and damages found to be just and owing.

## VIII.  Jury Demand

86. Torres repeats and re-alleges and incorporates by reference paragraphs 1- 83 inclusive as though fully set forth in their entirety herein.

87. Torres hereby formally respectfully demands a jury trial.

> Respectfully submitted
> I am,
>
> s/Peter E. Torres
> Peter E. Torre, Esquire
> 112 East 23rd Street, Suite 500
> New York, New York 10010
> T. 917-312-3169
> F. 212-473-7864
> E. pete2t@aol.com
>
> *On behalf of the Plaintiff*
> *Janice Elia Torres*

**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

_____

**JANICE ELIA TORRES,**                                              Case #01017 civ. 2015 (RA)

       **Plaintiff**

   -against-

*Jointly and Severally,*

**THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, JOHN DOE #1, JOHN DOE #2, and KIMBERLY BARTFIELD,**

       **Defendants.**

_____


_____

**VERIFIED COMPLAINT**

**AND JURY DEMAND**

_____


   **Peter E. Torre, Esquire**
   **112 East 23rd Street, Suite 500**
   **New York, New York 10010**
   **T. 917-312-3169**
   **F. 212-473-7864**
   **E. pete2t@aol.com**

   *On behalf of the Plaintiff*
   *Janice Elia Torres*